## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| ZECOTEK IMAGING SYSTEMS PTE LTD., et al., | ) ) ) ) | CASE NO. 5:12-cv-1533 |
| PLAINTIFFS, | ) ) | JUDGE SARA LIOI |
| vs. | ) ) | OPINION AND ORDER |
| SAINT-GOBAIN CERAMICS & PLASTICS, INC., et al., | ) ) ) ) | |
| DEFENDANTS. | ) | |

This matter is before the Court on the motion for leave to amend filed by plaintiffs Zecotek Imaging Systems Pte. Ltd. and Beijing Opto-Electronics Technology Co. (collectively, "plaintiffs" or alternatively, "Zecotek") (Doc. No. 188) and accompanying memorandum of law in support. (Doc. No. 189.) Defendants Philips Healthcare Informatics Inc. dba Philips Healthcare and Philips Medical Systems Cleveland Inc. ("Philips") have filed a response (Doc. No. 193), as has defendant Saint-Gobain Ceramics and Plastics, Inc. ("Saint-Gobain") (Doc. No. 195.) Plaintiffs have filed a reply. (Doc. No. 199.) Plaintiffs' motion is DENIED AS MOOT because plaintiffs subsequently filed a second motion for leave to amend their complaint (Doc. Nos. 221, 222, 223.) Both defendants have filed responses. (Doc. Nos. 226, 227.) Plaintiffs have filed a reply. (Doc. No. 230.) The Court shall consider plaintiffs' second motion for leave to amend only, though it shall refer to the briefing relative to the first motion as needed.

## I.      Rule 15(a)(2) Standard

Rule 15(a)(2) of the Federal Rules of Civil Procedure governs the plaintiffs' motion. It provides, in relevant part, that the Court should "freely give leave" to amend pleadings "when justice so requires."[1] "Nevertheless, denying leave is appropriate in instances of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 458 (6th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)). Courts should freely give leave to amend in the absence of these factors. *Foman*, 371 U.S. at 182. When filed "at a late stage in the litigation," however, a motion for leave to amend carries "an increased burden to show justification for failing to move earlier." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 459 (6th Cir. 2001) (citation omitted). Here, defendants assert undue delay, undue prejudice, and futility.

The Sixth Circuit has noted that "delay alone, regardless of its length is not enough to bar" the amendment "if the other party is not prejudiced." *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (citations and quotation marks omitted). Delaying an amendment until after the close of discovery, however, is per se prejudicial. *Scheib v. Boderk*, No. 3:07-CV-446, 2011 WL 208341, at *3 (E.D. Tenn. Jan. 21, 2011) (citing *Duggins*, 195 F.3d at 834).

"In determining what constitutes prejudice, the court considers whether the assertion of the new claim or defense would: require the opponent to expend significant

---

[1] Ordinarily, Rule 15 is augmented by Rule 16, requiring parties seeking leave to amend after a court's cutoff date for amending the pleadings to show "good cause." *Johnson v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 502 F. App'x 523, 541 (6th Cir. 2012). The Court has not yet set a deadline for amending the pleadings, so this heightened standard does not apply.

additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction." *Phelps v. McClellan*, 30 F.3d 658, 662-63 (6th Cir. 1994) (citation omitted). A party can also show prejudice by showing it "had insufficient time to conduct discovery of the [amended claim]; that [it] was unfairly surprised by the [plaintiffs'] change of theory; or that [it] had insufficient time to conform [its] pleadings to the [amended claim.]" *United States v. Wood*, 877 F.2d 453, 456-57 (6th Cir. 1989).

A futile claim, for purposes of a Rule 15(a)(2) motion, would not withstand a Rule 12(b) motion to dismiss. *Bergmoser v. Smart Document Solutions, LLC*, 268 F. App'x 392, 396 (6th Cir. 2008) (citation omitted). This Court has previously stated that "a court need make only a minimal assessment of the merits of any proposed new claims[.]" *Fred Martin Motor Co. v. Crain Commc'ns, Inc.*, No. 5:12-cv-1479, 2013 WL 626499, at *2 (N.D. Ohio Feb. 20, 2013) (citations omitted). "Namely, it must conclude that the proposed claims are not 'clearly futile' due to facial lack of merit, frivolousness, lack of jurisdiction, or other obvious legal defect." *Id*. (citations omitted).

## II.    Law and Analysis

### A.  Non-Saint-Gobain Crystals

1. Plaintiff's Proposed Amendment

In their amended complaint, plaintiffs maintain their claim for infringement of their patent, United States Patent No. 7,132,060 ("the '060 patent"), against defendants Saint-Gobain and Philips. Specifically, Zecotek alleges that Saint-Gobain "designs, makes, markets, uses, imports, offers for sale, and/or sells" crystals that infringe Zecotek's patent, while Philips "designs, makes, markets, uses, imports, offers for sale and/or sells Positron Emission

3

Tomography ("PET") scanners that use Saint-Gobain's LYSO crystals . . . that infringe the '060 patent." (Doc. No. 36 at 206.)

Plaintiffs now seek to accuse Philips of using infringing crystals manufactured by a non-party by adding the following language to their complaint: "Philips also designs, makes, markets, uses, imports, offers for sale, and/or sells Time of Flight Positron Emission Tomography ("PET") scanners that infringe the '060 patent through the use of LYSO crystals manufactured by other crystal manufacturers in addition to Saint-Gobain." (Doc. No. 222-1 at 3620.) Plaintiffs have used "other crystal manufacturers" as placeholder language for a specific third party manufacturer ("TPM"),[2] whose crystals Philips has used interchangeably with Saint-Gobain's in crystal modules called the "mixed modules." (Doc. No. 189 at 2675 n.2.) Plaintiffs do not seek to add TPM as a party to the lawsuit.

Plaintiffs' proposed amendment would transform a lawsuit against a manufacturer of allegedly infringing crystals (Saint-Gobain) and its customer (Philips) into a lawsuit against the manufacturer, its customer, and other allegedly infringing crystals used by the customer, but without joining the non-party manufacturer of the other allegedly infringing crystals.

In support of their motion to amend, plaintiffs argue that the amendment is timely, is supported by expert opinion, and causes no prejudice to defendants. Plaintiffs claim the amendment "accurately reflects Zecotek's infringement contentions, which Zecotek recently amended as a matter of course under [Local Patent Rule] 3.10." (Doc. No. 199 at 3064.) Moreover, plaintiffs claim that they have not delayed in adding this language, doing so mere days after receiving an expert declaration supporting a potential infringement claim against

---

[2] The Court refers to the third party manufacturer as TPM to respect the confidentiality of Philips's disclosure of the identity of TPM. (*See* Doc. No. 189 at 2675 n.2.)

TPM's crystals. (Doc. No. 189 at 2679.) In relevant part, the expert declaration provides:

> Because Saint-Gobain's crystals infringe the '060 patent and because Philips uses Saint-Gobain's lutetium-based crystals interchangeably with [TPM]'s lutetium-based crystals, it is my opinion that Plaintiffs have a good-faith belief that Philips' use of lutetium-based crystals from [TPM] in PET scanners infringe[s] the '060 patent. Indeed, it is my opinion based on the evidence I have seen that it is more likely than not that Philips' use and sale of PET scanners containing lutetium-based crystals from [TPM] infringes at least claims 1 and 5 of the '060 patent.

(Decl. of Robert Uhrin, Doc. No. 189-4 at ¶ 5.) Finally, plaintiffs maintain that defendants will suffer no prejudice from the added language, given the arguably early stage of these proceedings. (Doc. No. 189 at 2679.)

### 2. Defendants' Responses

Each defendant opposes the amendment. Philips claims that adding this language "would unfairly prejudice both Philips and [TPM] as neither party was able to participate in the claim construction process or other discovery that has taken place with respect to these newly accused products." (Doc. No. 193 at 2801.) Because Zecotek knew in May 2012 that Philips had replaced Saint-Gobain with another crystal supplier, Zecotek unfairly delayed over a year in expanding its infringement allegations to include TPM crystals, according to Philips. (*Id*. at 2806.) Philips also states that the proposed amendment is futile because the expert opinion relied upon by plaintiffs "is not only wrong, it is completely backwards[,]" and does not support infringement contentions against TPM crystals. (*Id*. at 2812.) Saint-Gobain largely agrees, adding only that the proposed amendment would cause delays in discovery, motion practice, and litigation proceedings that would deny Saint-Gobain prompt adjudication of its non-infringement. (Doc. No. 195 at 3023.)

### 3. Analysis

To truly understand what plaintiffs seek to accomplish through their amended

complaint, first consider its potential results. Imagine a future in which the amended complaint has been allowed. In this future, plaintiffs' infringement contention against Philips and its PET scanners would include "scanners that infringe the '060 patent through the use of LYSO crystals manufactured by other crystal manufacturers[.]" Now consider the trial between Zecotek and Saint-Gobain and Philips. Zecotek presents evidence that Philips's PET scanners use infringing crystals from Saint-Gobain and TPM. Saint-Gobain and Philips mount a vigorous defense, arguing that none of the crystals—neither Saint-Gobain's nor TPM's—infringe Zecotek's patent. When the jury deliberates and returns a verdict, one possible outcome may be that Philips's PET scanners infringe the '060 patent by using infringing crystals—those from Saint-Gobain and/or those from TPM.

Notably absent from the equation is TPM. In plaintiffs' future, TPM does not participate in the litigation: it is not brought in as a party; it asserts no counterclaims against Zecotek; it asserts no cross claims against defendants; conducts no discovery; makes no dispositive motions; presents no witnesses; cross examines no one; and makes neither an opening statement nor a final argument to the jury. To protect its interests, TPM must rely on others to defend its products—others who do not even know TPM's crystals' composition—or move to intervene in this dispute, catch up on nearly two years of litigation and discovery and resign itself to the Court's claim construction, having been excluded from participating in the *Markman* hearing. Moreover, the case, thus far confined to one company's crystals, with claims and counterclaims related to that company's crystals, balloons in scope.

No case cited by plaintiffs supports their proposed course of action. In *Vistan Corp. v. Fadei USA, Inc.*, 457 F. App'x 986 (Fed. Cir. 2013), for example, the United States Court of Appeals for the Federal Circuit ordered a district court to "reconsider" on remand a

6

motion to amend the complaint to accuse additional infringing products of defendants after reversing summary judgment as to noninfringement. *Id.* at 991. No third party was implicated. Other cases, whether cited by plaintiff or found in the Court's research, also have permitted amended complaints when plaintiffs seek to add additional claims against the defendant or a related company. *See, e.g.*, *ArcelorMittal Cleveland Inc. v. Jewell Coke Co., L.P.*, No. 1:10-CV-362, 2010 WL 4922913, at *2 (N.D. Ohio Nov. 24, 2010) (granting motion to amend complaint to add claims against defendant and defendant's parent corporation); *Cloud Farm Assocs., L.P. v. Volkswagen Grp. of Am., Inc.*, C.A. No. 10-502-LPS, 2012 WL 3069390, at *5-6 (D. Del. July 27, 2012) (granting leave to amend complaint to assert two new infringement contentions against *products made by defendants*); *Tesco Cop. v. Weatherford Int'l, Inc.*, Civil Action No. H-08-2531, 2009 WL 497134, at *2 (S.D. Tex. Feb. 26, 2009) (granting leave to amend to add patent claim against defendant *already participating in litigation*).

       The Court instead finds guidance in two district court decisions. The first court denied leave to amend a complaint to assert a new patent against a defendant already in the case. Concluding that the amendment would cause undue delay and undue prejudice, the district court denied leave to amend. *j2 Global Commc'ns, Inc. v. EasyLink Servs. Int'l Corp.*, No. CV 09-04189 DDP (AJWx), 2011 WL 1532048, at *2-3 (C.D. Cal. Apr. 21, 2011). Because the defendant in question did not participate in the "lengthy *Markman* hearing with extensive briefing[,]" the court observed that it would be forced to repeat claim construction briefing and conduct an additional *Markman* hearing. *Id.* at *2. Importantly, the court summarily dispensed with the argument that, had defendant participated in the *Markman* hearing, the defendant would not have "present[ed] any claim construction positions other than those that the other defendants previously raised." *Id.* Because "[t]here [was] no evidence that [defendant] [was] similarly

7

situated, share[d] the same interests, or [was] protecting the same or an analogous product[,]" defendant would require a separate *Markman* hearing. *Id*. The second court denied plaintiff's motion for leave to amend, even before claim construction, to assert an additional patent against a defendant already in the lawsuit. *Alzheimer's Inst. of Am. v. Elan Corp, PLC*, 274 F.R.D. 272, 276 (N.D. Cal. 2011). Because defendant had "lost the opportunity to attempt to persuade its co-defendants to adopt a different, united front on the key term in the [additional patent,]" the court found that forcing defendant to participate in claim construction on short notice would unduly prejudice it. *Id*.

       Here, though plaintiffs do not assert a new patent or bring in a new defendant, undue prejudice results nonetheless. Plaintiffs seek to add TPM's crystals as an infringing product without adding TPM itself. The prejudice to TPM abounds. TPM had no opportunity to participate in the parties' many discovery disputes or claim construction, which has now been completed. (*See* Doc. No. 232.) Saint-Gobain and Philips would also suffer undue prejudice. They participated in the *Markman* hearing and submitted claim construction briefing without any consideration of TPM's crystals. As in *j2 Global Communications*, the Court is not persuaded by plaintiffs' argument that defendants' "proposed [claim] constructions would remain the same," if TPM's crystals had been involved in the *Markman* hearing. (Doc. No. 199 at 3069.) Indeed, had TPM's crystals been at issue during the *Markman* hearing, TPM might have intervened and might have had different interests than either Saint-Gobain or Philips. Speculating ultimately produces little—because the Court cannot know how TPM or TPM's crystals would have affected the past two years of litigation, it will not prejudice TPM, Saint-Gobain, or Philips by shoehorning TPM crystals into the litigation after two years. This lawsuit alleges Saint-Gobain's

crystals and Philips's use of Saint-Gobain crystals in its PET scanners infringe the '060 patent.[3] Changing the fundamental character of the lawsuit at this stage would unfairly prejudice the parties.

Additionally, if the motion to amend were granted, the litigation would be unduly delayed. As to TPM's crystals, both Saint-Gobain and Philips would essentially start discovery and trial preparations, now in their twenty-seventh month, anew. *See Dubuc v. Green Oak Twp.*, 117 F. Supp. 2d 610, 620-21 (E.D. Mich. 2000) (denying motion to amend partly because existing parties would spend significant time and resources seeking discovery from a new party), *aff'd*, 312 F.3d 736 (6th Cir. 2002). Indeed, as Philips has stated, it does not even possess the chemical composition of TPM's crystals. (*See, e.g.*, Doc. No. 125 at 1710; Doc. No. 193 at 2809.) To adequately defend TPM crystals against Zecotek's infringement contentions, Philips—wholly unconnected with TPM's manufacturing process—would require months upon months of discovery[4] and trial preparation.

Undue prejudice and litigation delays aside, the motion to amend amounts to little more than an attempt to avoid the consequences of Zecotek's own litigation strategy. After discovering the "mixed modules" containing TPM and Saint-Gobain crystals, Zecotek sought to test the modules, and although defendants disputed that such testing could reveal whose crystals infringed, the Court allowed Zecotek to propose a testing protocol by January 31, 2014. (*See* Non-Document Order, Jan. 17, 2014.) On the appointed day, Zecotek filed a statement regarding testing protocol for mixed modules, which stated, in its entirety:

---

[3] To dispense very quickly with plaintiffs' repeated protestations that the Court granted defendants' motions to amend in the same stage of this litigation, the Court notes that none of defendants' proposed amendments changed the fundamental character of this lawsuit, which focuses on Saint-Gobain's crystals, Philips's use of Saint-Gobain crystals in its PET scanners, and the '060 patent.

[4] As Magistrate Judge Limbert has observed, "the parties have demonstrated a marked inability or unwillingness to resolve discovery issues without court intervention." (Doc. No. 179 at 2573.)

> Pursuant to the Court's Order of January 17, 2014, Zecotek Imaging Systems PTE. LTD. ("Zecotek") does not intend to move forward with the testing of crystals from Philips's mixed modules at this time. Because Philips has not completed its production of information related to the modules, however, Zecotek reserves the right to renew its requests for such crystals before the end of discovery.

(Doc. No. 187 at 2661.) Now Zecotek seeks to accuse Philips of manufacturing PET scanners "that infringe the '060 patent through the use of LYSO crystals manufactured by other crystal manufacturers in addition to Saint-Gobain." (Doc. No. 222-1 at 3620.) Lumping Saint-Gobain's crystals together with TPM's crystals eliminates Zecotek's mixed module testing problem because it would not have to identify which manufacturer's crystals in the mixed module, if any, infringe the patent.

Indeed, Zecotek's proposed amendment not only relieves Zecotek of the burden of testing the mixed modules, it forces *Saint-Gobain* to do so instead. If Zecotek's assertion that the mixed module crystals infringe its patent were true, Saint-Gobain would be put in the position of proving who manufactured the offending crystals, even though Saint-Gobain claims that such testing cannot be done. The Court will not permit Zecotek to foist its testing burden upon others, particularly when it involves the manufacturing process of a third party. This would prejudice the third party as well as Saint-Gobain.

The Court does note that Philips has contributed to the delay in Zecotek's attempted amendment. Philips disclosed TPM's identity in June 2013, more than a year after litigation commenced and only upon Court order, and disclosed the existence of the mixed modules in late 2013. (Doc. No. 189 at 2676.) While the Court frowns upon Philips's dilatory conduct in producing discovery, it cannot ignore the prejudice resulting to Saint-Gobain and TPM from Zecotek's proposed amendment.

Though Philips delayed disclosing TPM, Zecotek also bears some responsibility for the delayed amendment. Plaintiffs have known about TPM since June 2013, but waited until January 2014, after issues with testing the mixed modules arose, to move to amend the complaint. In May 2013, before it learned TPM's identity, Zecotek claimed that "[b]ased on Philips's performance requirements for scintillating crystals used in its PET scanners, . . . Philips cannot operate its PET scanners with non-infringing crystals." (Doc. No. 115 at 1388.) Yet, Zecotek did not seek leave to amend to accuse TPM crystals when it learned of TPM in June, nor did Zecotek seek discovery from TPM for several months. (Doc. No. 167 at 2483.) Zecotek's delays lessen the severity of Philips's dilatory conduct, while strengthening the inference that Zecotek's motion for leave to amend seeks to avoid the need to prove its case against Saint-Gobain relative to the mixed modules.

In weighing the *Foman* factors, the Court finds undue prejudice would result to Saint-Gobain and Philips through Zecotek's amended complaint, not to mention TPM, whose products would be swept up in this litigation without affording it an opportunity to participate, or, if it chooses to intervene, forcing it to accept two years of litigation in which it had no part. Amending the complaint would cause undue delay in the litigation, and represents little more than Zecotek's attempt to avoid the Court's previous orders regarding testing of the mixed modules. The Court takes no position on the amendment's futility. While the Court notes that Philips contributed to the amendment's delay, this factor alone does not outweigh all the others. If plaintiffs truly have valid claims that TPM's crystals and Philips's use of them infringe the '060 patent, then a new lawsuit—against TPM and Philips—is the place for such claims. For two years, this litigation has centered on Saint-Gobain crystals and the '060 patent. They shall remain its center.

11

### B.  Other Philips Products

Zecotek also seeks to "make a technical amendment to its allegations against Philips, claiming infringement of the '060 patent by Philips's products that contain the accused crystals, 'including but not limited to' Philips PET scanners." (Doc. No. 223 at 3628.) Claiming that "Philips's response to a recent interrogatory and the parties' meet and confer following receipt of Philips's response indicated that Philips utilizes LYSO crystals in products besides PET scanners[,]" Zecotek seeks to bring these other products into the lawsuit. (*Id.*) In its next breath, however, Zecotek admits that "Philips has since confirmed that none of its other products besides PET scanners contain the accused LYSO crystals[.]" (*Id.*; *see also* Doc. No. 223-5 at 3687.)

In short, Zecotek admits that it has no basis upon which to assert that other Philips products contain LYSO crystals. Adding other Philips products to this lawsuit would, at this point, be premature.

### C.  Spoliation Claims

Zecotek seeks to add spoliation claims against both defendants. Under Ohio law, a spoliation claim contains the following elements: "(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts[.]" *Smith v. Howard Johnson Co., Inc.*, 67 Ohio St. 3d 28, 29, 615 N.E.2d 1037 (1993). No court "has extended spoliation to anything other than the destruction of physical evidence." *Pratt v. Payne*, 153 Ohio App. 3d 450, 454-55, 794 N.E.2d 723 (Ohio Ct. App. 2003) (collecting cases).

12

1. Against Philips

Zecotek's proposed spoliation claim against Philips provides:

23. Philips's Counterclaim for Spoliation, filed March 10, 2014, alleges that "Zecotek has anticipated this litigation since at least 2007. Indeed, as early as 2007 Zecotek was informing Saint-Gobain customers in written correspondence that Saint-Gobain purportedly infringed the patent in suit."

24. Philips acknowledges that the written correspondence referenced in its Counterclaim is a letter from Zecotek's counsel of record in this suit, Thomas Loop, to Philips's director of purchasing, William Bradley, on August 8, 2007.

25. Philips acknowledges that Mr. Loop's letter requested that Philips preserve all Saint-Gobain crystals within Philips's possession, as well as communications related thereto, "thereby avoiding any future spoliation of evidence issues."

26. According to Philips's Counterclaim, Zecotek's duty to preserve documents and information arose at the time of Mr. Loop's letter to Philips.

27. To the extent Mr. Loop's letter triggered Zecotek's duty to preserve documents and information, the letter also triggered Philips's duty to preserve documents and information by placing Philips on notice that litigation was probable, and Philips is estopped from arguing otherwise. Regardless of whether Mr. Loop's letter triggered Zecotek's duty to preserve documents and information, the letter triggered Philips's duty by specifically requesting that Philips preserve documents and information.

28. Although Philips's duty to preserve documents and information arose in 2007, Philips took no action to preserve documents and information until after Zecotek filed its Complaint in 2012.

29. After Philips's duty to preserve documents and information arose in 2007, Philips failed to preserve documents and information, and, upon information and belief, willfully destroyed documents and information, including but not limited to emails that Philips destroyed when it changed email systems in September 2008.

30. Upon information and belief, Philips's failure to preserve documents and information and Philips's willful destruction of documents and information was designed to disrupt Zecotek's claims against Philips and Saint-Gobain.

31. Philips's failure to preserve documents and information and Philips's willful destruction of documents and information has, in fact, disrupted Zecotek's claims against Philips and Saint-Gobain.

13

32. Zecotek has suffered damages as a result of Philips's failure to preserve documents and information and Philips's willful destruction of documents and information in an amount to be determined at trial.

(Doc. No. 222-1 at 3622-23.)

Zecotek has properly alleged each element of spoliation. As to the first and second elements, Zecotek claims that Philips's spoliation occurred after it received notice to preserve documents in light of probable future litigation. Under the third element, Zecotek alleges that Philips willfully destroyed relevant emails and documents. As to the fourth and fifth elements, Zecotek alleges that its case against Saint-Gobain and Philips was disrupted and damages resulted.

Philips opposes the amendment on three grounds: undue delay, futility, and unfair prejudice. (*See* Doc. No. 226.) Philips claims that Zecotek "has been aware of the factual basis for its new proposed spoliation claims since June 20, 2013 – over 10 months ago[.]" (*Id*. at 3728 (emphasis omitted).) According to Philips, Zecotek waited until the Court granted Philips's motion for leave to amend "to add a 'me too' claim against Philips and Saint-Gobain." (*Id*. at 3729.) Philips also argues that Zecotek's proposed amendment is futile because the August 8, 2007 letter that Zecotek claims triggered Philips's duty to preserve documents for future litigation (*see* Doc. No. 223-2) rested on a "flawed infringement theory" that could not support an infringement claim. (Doc. No. 226 at 3730-31.) Additionally, the letter expressed Zecotek's desire to avoid civil litigation against infringing parties. (*Id*. at 3732.) Because the letter did not advance a valid infringement theory and explicitly stated that Zecotek wished to avoid litigation, the letter could not have put Philips on notice of probable litigation. Finally, Philips claims that it will suffer undue prejudice from the amendment, which will "gin up even more discovery

14

disputes[]" and "force Philips to defend itself against additional baseless allegations[.]" (*Id.* at 3734.)

Zecotek has indisputably delayed in adding a spoliation claim against Philips. Zecotek states that it "*confirmed*" on April 9, 2014, that Philips received the 2007 "preservation letter" from Zecotek but nonetheless destroyed documents during its 2008 email changeover. (Doc. No. 223 at 3630 (emphasis added).) Zecotek has known, however, about the 2008 document destruction since June 2013, ten months ago. (Doc. No. 226 at 3728; *see also* Philips Document Collection Memorandum of 10/1/2013, Doc. No. 223-3 at 3672.) Zecotek did not move to add a spoliation claim in June 2013. Nor did Zecotek seek to add a spoliation claim on January 31, 2014, *when it filed a motion for leave to amend*. Yet, as mentioned above, "delay alone, regardless of its length" is not enough to bar amendment "if the other party is not prejudiced." *Duggins*, 195 F.3d at 834 (citations and quotation marks omitted).

Philips, which claims it will suffer prejudice by defending itself against "additional baseless allegations," (Doc. No. 226 at 3734), has not adequately shown that it will suffer prejudice from the delayed amendment. First, as all parties have noted in recent months, there is no deadline in this case for amending pleadings or completing discovery. (*See, e.g.*, Doc. No. 169 at 2496; Doc. No. 223 at 3633.) Second, this claim does not change the fundamental nature of the case or bring in any new parties or products.  While Philips shall be forced to defend an additional claim, this does not constitute undue prejudice.

In arguing that the proposed amendment is futile, Philips raises factual issues as to the merits of the spoliation and infringement claims. It argues that Zecotek cannot show that Philips was on notice of probable litigation in 2007 because Zecotek's infringement theory was fatally flawed. This, according to Philips, negates the second element of a spoliation claim.

Philips's arguments, however, raise factual questions about infringement that the Court may not address when considering an amendment's futility. *See Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000) ("The test for futility, however, does not depend on whether the proposed amendment could potentially be dismissed on a motion for summary judgment; instead, a proposed amendment is futile only if it could not withstand a Rule 12(b)(6) motion to dismiss.").

Taking all the allegations in the proposed amendment as true, as the Court must, the amendment properly states a claim for spoliation and does not suffer from an obvious legal defect. The claim is not futile, and there is no basis upon which to deny Zecotek leave to amend to add a spoliation claim against Philips. That the claim may ultimately fail (whether by dispositive motion or at trial) is of no moment at this stage of the proceedings.

### 2.  Against Saint-Gobain

Zecotek's proposed claim against Saint-Gobain for spoliation provides:

34. Saint-Gobain had knowledge of Zecotek's claims no later than February 23, 2012, when Zecotek filed its complaint.

35. Saint-Gobain conducted compositional testing on samples of its own LYSO crystals, including but not limited to PreLude 420 crystals, after Zecotek filed its Complaint.

36. Saint-Gobain possessed relevant documents from a prior litigation, including written discovery responses and sealed trial filings, after Zecotek filed its Complaint.

37. Saint-Gobain had a duty to preserve these documents and crystal samples.

38. Saint-Gobain failed to preserve documents and crystal samples, and, upon information and belief, willfully destroyed documents and crystal samples.

39. Upon information and belief, Saint-Gobain's failure to preserve documents and crystal samples and Saint-Gobain's willful destruction of documents and crystal samples was designed to disrupt Zecotek's claims against Saint-Gobain

16

and Philips.

40. Saint-Gobain's failure to preserve documents and crystal samples and Saint-Gobain's willful destruction of documents and crystal samples has, in fact, disrupted Zecotek's claims against Saint-Gobain and Philips.

41. Zecotek has suffered damages as a result of Saint-Gobain's failure to preserve documents and crystals samples and Saint-Gobain's willful destruction of documents and crystal samples in an amount to be determined at trial.

(Doc. No. 222-1 at 3624.)

Zecotek has properly alleged each element of spoliation. As to the first and second elements, Zecotek claims that Saint-Gobain's spoliation occurred after Zecotek filed its complaint. Under the third element, Zecotek alleges that Saint-Gobain willfully destroyed sample crystals and litigation documents, both relevant to the instant dispute. As to the fourth and fifth elements, Zecotek alleges that its case against Saint-Gobain and Philips was disrupted and damages resulted.

Saint-Gobain opposes the amendment on the sole basis of futility, and the Court shall address this factor alone. (Doc. No. 227 at 3768.) Because Zecotek's proposed claim "consists of nothing more than a formulaic recitation of the elements of a spoliation claim[,]" Saint-Gobain argues that it would not survive a motion to dismiss and is, accordingly, futile. (*Id.* at 3770.) Moreover, Saint-Gobain argues that it has provided Zecotek "more than sufficient access" to test its crystals, as well as "abundant documentation regarding its accused crystals[.]" (*Id.* at 3772.) Additionally, Saint-Gobain argues that it has preserved and produced to Zecotek the entire database of collected documents from the prior litigation. (*Id.* at 3773.) In short, Saint-Gobain alleges facts which, if true, indicate that Zecotek's proposed spoliation claim could be dismissed on a motion for summary judgment or will ultimately fail at trial.

As stated above, "[t]he test for futility, however, does not depend on whether the

17

proposed amendment could potentially be dismissed on a motion for summary judgment; instead, a proposed amendment is futile only if it could not withstand a Rule 12(b)(6) motion to dismiss." *Rose*, 203 F.3d at 421. Here, Zecotek has properly alleged all the elements of a spoliation claim under Ohio law and, by identifying the crystals and litigation documents at issue, has provided enough facts to state a claim for relief that is plausible on its face. Taking plaintiffs' allegations as true, as the Court must, "the proposed claims are not 'clearly futile' due to facial lack of merit, frivolousness, lack of jurisdiction, or other obvious legal defect." *Fred Martin Motor Co.,* 2013 WL 626499, at *2 (citations omitted). The claim is not futile, and there is no basis upon which to deny Zecotek leave to amend to add a spoliation claim against Saint-Gobain.

### III.     Conclusion

For the reasons set forth above, Zecotek's motion to amend the complaint is GRANTED IN PART AND DENIED IN PART. Zecotek may file an amended complaint, in compliance with this order, within seven (7) days of the issuance of this order.

**IT IS SO ORDERED**.

Dated: May 13, 2014

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

18